Thank you, Your Honor. Good morning. I'm Michael Schein. I represent the appellant BDK, Inc. at all. I'd like to reserve three minutes for rebuttal, please. Watch your clock and I'll try to help you as well. Escape Franchise Steak Escape Restaurants to my client, BDK. This dispute started as a relatively small dispute when Escape required BDK to use unsafe potato cooling methods and there were questions that impacted the public health and safety. BDK, after five years of trying to resolve this, began to withhold some royalties. Ultimately, this dispute resulted in an economically crippling set of orders against BDK, requiring it to forfeit their businesses, three businesses, with all tenant improvements valued at roughly $750,000 without any compensation. A large portion of that is in the South Center franchise, for which there was never any trial. The first error I'd like to address concerns the issue of collateral estoppel. The district court held that BDK was estopped to show various violations of the Washington Franchise Investment Protection Act that occurred at South Center based on arbitration proceedings that expressly excluded South Center from the scope of the hearings. Issues such as the potato handling process and kickbacks to escape from suppliers and other such FIPA violations were at issue. Under Clark v. Bear Stearns, there are three elements that the Ninth Circuit applies in determining collateral estoppel. First, the issue to be estopped must be identical to the one heard in the prior litigation. Second, it must have been actually litigated. Third, it must be critical and necessary to the underlying decision. Escape must show all of these elements with clarity and certainty. Here, none of those elements are present. Were there any contentions about unfair practices or legal violations by the franchisor with respect to South Center that weren't parallel to the allegations about the other units? Yes, Your Honor. For example, in theory, I could imagine you could have different violations for different stores. But often a franchisor, if it's taking kickbacks, is doing them area-wide, you know, or often the stores would have common suppliers. If a franchisee had a bunch of stores, they might get all their FIPA goods from one supplier in the state. Or if it was, you know, groceries or things perishable like vegetables, maybe they would each get different ones. But I think we need to know specifically, how is South Center different? Well, Judge Gould, South Center is different on really the most important dispute, and that's potato handling. That involves inspections by health inspectors. Now, it's in a different county than other of the stores, so we've got different inspectors. The inspection times are different. The kinds of warnings or penalties to be applied are different. Let me ask you about the French fries, because I thought it was that the method, if they were using the same method which you contend was in violation of Washington health code, if that was present in South Center at the same time that judgment was made in these other circumstances, isn't that more of a generic challenge rather than a South Center-specific challenge? Judge McKeon, the method that was mandated is the same, but these other differences are very significant. For example, the arbitrator found that BDK ameliorated the difficulties by various equipment that it suggested be used, excuse me, that Escape mediated the difficulties. But each of these stores are different in their setup and the amount of space they're allowed in the mall. And for South Center in particular, it has very small space allowed to it. It doesn't have room for certain kinds of cooling tower equipment that might be able to be applied at Kitsap or at another mall. So you say that maybe the problem on the French fry operation could be cured in Kitsap County because of the store layout or what the inspectors would allow but maybe couldn't be cured at South Center? That's correct, Your Honor. Okay. So let's move from French fries to two other aspects, the withdrawal of support and whether this marketing mixover with the staff salaries, is that a franchisor-wide practice or is there something specific alleged to be the South Center? The arbitrator found that BDK had failed to show that the kickbacks were attributable to the business, to the supplies purchased at the particular stores. We never put in our evidence or had an opportunity to, to show that it was particular to the delivery of equipment to South Center. That's what I listed under my little list as the payoff of the vendors? Correct. Is that what you would be talking about? That's correct, Your Honor. So you're saying, okay, there could be different payoffs in South Center than Kitsap or some other county? That there's different evidence to show that it was tied to, to supplies that were bought at South Center. Okay. So that's what the. . . I understand are the vendors different for the different franchises? No, the vendors are, as I understand, uniform. It's the same vendors. For all goods? Correct. Even for, for produce? You know, I'm not, my understanding is generally they're similar. Now, I don't, I don't have the level of specificity to give you an exact answer on that. I guess the other, the ones I was referring to seemed more generic. I understand your argument on the payoff of the vendors, but it seemed to me that your general allegations on withdrawal of support and these marketing allegations are really generic allegations that aren't South Center specific. But, Your Honor, even if it's just the potato issue, which is. . . No, I'm off of potato. No, I understand that. And, and with respect to the support, I don't think there's a record on that. I can tell you that, as I've cited the law to you, it's very clearly the burden of escape to show in the record specific differences, and they've failed to do that. Or, excuse me, to show in the record specifically that the issue as to South Center was tried. So with respect to. . . Let's look at the practical. . . So the practical result of this. . . Let's just leave aside what might happen to the rest of the case. Right. Is if you were correct that the district court erred on that, they would simply go back to court because there's no arbitration agreement on South Center? Correct. It would go back to the court for a trial. As opposed to being collateral estoppel on the defense that BDK has that there were violations, material violations of FIPA that preclude enforcement of the franchise agreement. Not necessarily go back for a trial if there was. . . Well, it could be. . . Appropriate for summary judgment. It could be presented in summary judgment, but so far it's just been dealt with on collateral estoppel, which is the error. As specific as you can be. And there's. . . Could I just finish answering? Absolutely. And there's another, I think, important consequence, and that is that violations of FIPA, especially on matters affecting public health like food handling, significantly affect the equities between the parties and the balance of equities, and therefore it undermines the giving of injunctive relief. Until the courts determine whether there are such serious violations, then it cannot properly give an injunction. I'm sorry, Judge Gould. No problem. I just would like you to be as specific as you can be about the Franchise Investment Protection Act or unfair competition allegations that you are alleging, so I can understand what could be specific to South Center. Now, I understand the potatoes. I understand your argument on there's a problem with the potatoes, and the amelioration of it might be site-specific. But if, for example, the allegation was franchisers said they would use a part of our royalties to do regional advertising, you know, in Western Washington, and that's arbitrated and it's found not to be a violation, that would seem to be an example of one that would be the same for South Center as for any other unit in Western Washington. And I wouldn't disagree with that. So what I'm trying to understand is with regard to your specific allegations that were in the complaint or identified in discovery, what is there that is specific to South Center, and what is there that was general that was arbitrated? In other words, where did the judge extend it? He applied collateral estoppel on all the claims, I guess. Which claims should still be tried? The potato handling, the kickbacks to suppliers, and the failing to provide promised training and support, which manifests differently from one restaurant to another in terms of what support was provided is the specific answer. Now, was there evidence on the summary judgment motions, was there evidence presented to Judge Zille that these issues were different for South Center than, or did he just handle that before you got to summary judgment? It was handled on summary judgment and escape failed to carry its burden, showing that this had been tried with respect to South Center, and we argued that these would present differing issues. On the second issue I'd like to talk about, the district court should not have decided substantial similarity of products on summary judgment. This comes about because BDK de-identified its restaurants and called them Philly's. And Philly's, the question is whether products at Philly's are substantially similar to products at Steak Escape, which triggers the non-competition clause. The issue applies to all the restaurants because the non-competition clause and the lease assignment that follows on it was expressly excluded from arbitration. Of course, on summary judgment, the court is required to view the evidence in the light most favorably to the non-moving party, which here is BDK.  The menu, color scheme, employee uniforms, et cetera, at Philly's, are very different from what they were at Steak Escape restaurants, and the restaurants do not serve any of the Steak Escape proprietary brands or signature items such as fresh-cut French fries or fresh-squeezed lemonade. With this evidence before it, it's our contention that it was not proper for the court to decide this material disputed issue and to go forward and find on summary judgment that there was substantial similarity between Philly's products and the products that had been sold at Steak Escape. Well, if he had pictures. We have photographs, correct. Photographs. You know, he doesn't have to accept, I don't think, a principal's affidavit if it was contradicted by the photographs. Well, those things aren't contradicted by the photographs. In terms of not serving the proprietary brands or signature items, such as fresh-cut French fries or fresh-squeezed lemonade, that's not in the photographs. The photographs address the trade dress. But you could still be selling a similar product or have a similar operation even if you cut out a handful of signature items. Well, it really comes down to a question that's an important one that we tried to address to Judge Zilley that he did not focus on, and that is what is similarity? And we maintain that the only place that there's any standard for that, aside from the general language substantially similar, which doesn't tell us a lot, is in paragraph 10C of the franchise agreement for South Center, which talks and the other franchise agreements, which deals with termination. And in that paragraph, it requires upon termination discontinuance of the use of and return of a list of proprietary items, methods, and products. It doesn't require them to entirely get out of the sandwich restaurant business. Now, that's different from, say, the non-competition clause in the Armstrong case that involved the Mexican restaurants. It required them to get out of the fast food Mexican-type restaurant business. So with that in mind, the very specific testimony that we're not using the proprietary items and methods, and he went on in a subsequent declaration to say that we do not even have access to the meats, cheeses, and breads that are exclusively used in defendant's restaurants, that testimony at least creates a question of fact and requires us to go to trial and not short-circuit the process on summary judgment. But it requires an interpretation of the legal terms of the agreement, doesn't it, in terms of what similar to means? Well, I think so, but I don't think it was really addressed by Judge Zille as a fact question. I mean, at one point he even said, I think this creates a question of fact. And then he changed his view. But there is this kind of inchoate question of what does the contract mean also in order to apply the facts to it. Well, that seems to me the very first, because if you determine that similar doesn't mean solely trademark or distinct market. Proprietary items. But what you call the proprietary items, then similar means of a nature of the, quote, goods and services. And whether you have mashed potatoes or smashed potatoes, they're similar. They're mushed potatoes on your plate. You know what I'm saying? Right. So it seems to me that before we could decide if there's a factual issue, we've got to determine how to interpret the contract. And I strongly urge you to look at paragraph 10C in doing that. And to make it even clearer, this may be another area in which South Center is different than the others. Because South Center was an earlier franchise agreement. The later franchise agreements added to that paragraph 10C, and they shall discontinue selling grilled sandwiches, and I think they all said fresh-squeezed lemonade. But South Center doesn't say that. There's no bar on continuing to sell grilled sandwiches. And none of them have a bar on continuing to sell sandwiches. At which point a veggie sandwich or a turkey sandwich is pretty much a generic item. The third issue I would like to address very quickly is non-delivery of the amended uniform franchise offering circular. And this, again, is very important because it applies to South Center. That contained the lease assignment term and the second year of the non-compete. Now, remember, what has been ordered here is nothing less than total uncompensated forfeiture of the franchise business that BDK spent 12 years and hundreds of thousands of dollars building up. Forfeiture is disfavored by the law. Non-competition agreements are also strictly viewed by the law. FIFA requires actual delivery of the offering circular. The district court agreed with that and found that the amended offering circular was not delivered. That's the transcript at page 53. Because ESCAPE cannot show actual delivery, it was unlawful to sell the South Center franchise. Now, the appropriate remedy is really the question here. And it is our we're not contending that the entire thing that was kind of lived by for 12 years by everybody should be set aside. That it was void initially. But what we are saying is that when the court then is being asked by ESCAPE to specifically, prospectively enforce these anti-competitive clauses, including the conditional lease assignment requiring the assignment of this valuable restaurant business or these businesses, it needs to take into account the illegality in the formation of the contract and not specifically enforce those very terms that were left out. Would you like to reserve the remaining time for rebuttal? Oh, I'm sorry. That was all my time. I'm sorry. Then I would like to reserve it for rebuttal. I didn't realize that. Right. Thank you. They give you the whole wax. Yes. Good morning. I'm Pete Silverman, and I represent the appellees. On the factual side, this is really a fairly traditional case. A franchisee chose to pay half royalties as a protest move and after eight months of wrangling was terminated and after many months of wrangling then has gotten rid of his stores after the termination was upheld. And while there are a lot of legal issues, I think as we get into the facts, the facts are pretty simple. I think the reason Judge Zilley threw it out is it's a pretty clear case. Let's talk about the legal issue of collateral estoppel. Yes. South Center agreement, as I understand it, had no arbitration clause. Correct. And so issues of South Center weren't litigated in the arbitration, or at least specific to South Center they weren't. But I guess Judge Zilley could say, well, a generic issue that applied to the whole region was litigated and preclude BDK. But what do you make of the argument that appellant makes that some things are distinct for South Center, like whether they could accommodate the potato operation, and that would depend on the site plan and that might also depend on the King County inspectors versus the Kitsap County. I think if BDK had raised those in summary judgment, we would not be here on this issue. Those would have created genuine issues of material fact. But what happened was we filed a summary judgment motion, and we said, look, Judge, they chose a talking complaint. They pleaded these as generic system-wide issues. We put all the stores into the arbitration other than South Center, which included the 88-89 ones, so you have all 14 years. They argued to you to keep South Center first and try that first, because that would collaterally stop the others. We've received no evidence that South Center is different. So you can apply issue preclusion. They then raised two issues separate for South Center, which created genuine issues of – well, didn't create genuine issues of fact. It created a separate issue that the judge had to rule on outside of collateral estoppel. One was this thing where their attorney didn't read the agreement in 1988. And the second was whether the implied in fact contract. So because they raised those issues, the judge could not apply collateral estoppel to those. Those are unique South Center issues, and the judge ruled on them. The corner that they're in, and the reason you got the answer to your question when you said, well, was there evidence of this, the answer was they didn't meet their burden. And so the answer is no, they didn't present any evidence. There's nothing before the district court, you're saying, that would suggest there could be differences that would separate out South Center issues. Correct. If his argument was an affidavit below, that would have created a genuine issue of material fact. Whose burden – who has a burden on that issue? Do you have the burden to show that the issues were the same to get issue preclusion, or do they have the burden to come forward and say South Center is different? We have an issue – we have the burden to make a prima facie case by saying they pleaded it all the same. On the face of it, from the facts of all of it, they're generic, system-wide. They've even argued, too, that if you resolve South Center, it would resolve the others. And we created a prima facie case by bringing forth those issues and saying they're exactly alike and that the court ruled on the 888 – arbitrated rule on the 8889, 94, 95, so we have the full 14 years. Once we come in and say recipsalopiter plus all these other issues where they pleaded and everything, it's identical, they then have the burden of coming forth and saying, no, we've got this UFOC issue, we've got this implied-in-fact issue, and if they wanted to, they could have raised any of these issues. They chose not to. And so it's a shifting burden issue. There's some law that – I understand your mode of analysis, but do we have any precedent that says that the district court, under these circumstances, should put the burden on them to show how it's different? Well, I think that's just standard Rule 56 precedent. Well, without the facts, that it would be pretty hard to rule otherwise, other than looking at the allegations and the complaint. Correct. Which are admissions, which they pleaded, and they pleaded it completely that way. They pleaded it, this is a problem for all these units. This is a problem for all the units. And if we look at the – and now I'm recycling my brain and I can't focus, but if we look at the declarations, if there were any, in the summary judgment phase, they would not cast any different light on what was alleged in the complaint then, would you say? Correct. Okay. But now they said the arbitrator said on the potato issue, for example, that it was ameliorated in these other units. In other words, there was a problem, but the franchisee could work around it. Wouldn't that be different in each unit? Well, the arbitrator actually said two things. He said one is BDK ameliorated itself, figured out a solution, but also he found that ESCAPE provided two solutions that it could have used. And so BDK theoretically could have come forward and said, hey, it was too small at South Center for our own self-fix, and the two fixes you gave me didn't work at South Center because of X, Y, and Z. But they chose not to do so. I see. Okay. And we had structured it with the transcript and the findings of fact and conclusions of law so the judge could apply collateral estoppel. Let me tell you the issue that there are many here, but the one that certainly gives me some pause is the interpretation of this non-compete because that's obviously a significant restriction. And I guess the question I have is if we look at the same or similar in the context of this franchise, are we looking at generic products or are we looking at proprietary or some combination in your view? Yeah, let me try and answer that. If we were to ask you to give an advisory opinion, this would be a difficult argument for me to make. For example, what these restaurants are is they're grilled meat, and there's testimony in there. You grill the meat, you grill the vegetables, you grill the cheese, you put them on, you grill it, you throw it on a salad, or you grill it and you smash a potato. These are Philly cheesesteak places with salad and stuff. In this case, what they did, and we had pictures of it and testimony. Their pictures, by the way, just show a brochure. Our pictures are the store before and afterwards. It looks identical. The menu, just change the names briefly. So in our case, it definitely is the same or similar too. If he had wanted to open, say, a Subway sandwich where they didn't grill the meat, but they microwaved it, I don't know what the answer is. I'd be arguing that's similar too. If he wanted to open a McDonald's, that's not similar to it. I mean, those are generic sandwiches. A deli is a generic sandwich. These are grilled Subway, grilled meat on salad, grilled meat with potatoes. So in this case, the evidence was very clear that this was the same or similar too. As to how far it goes, I think that's an advisory opinion that you don't need to reach. And so what you're saying is that, in your view, the proprietary tag lines that you give to them are kind of irrelevant. Correct. So in a way, it's the way the sandwich is stacked and what's in it. Correct. Like in the United States, there are three large Philly cheese concepts, Escape, a place called Charlie's, and another place called Great Steak and Escape.       I think that's the way it is. I mean, I think that's the way it is. That's that mode. And when lessors put in restrictions, they restrict it that way. Could they open a lemonade stand? I think they could, yes. And why could they open a lemonade stand if, in fact, you sold lemonade? You know, again, it becomes, you know, it becomes a common sense decision where I think a judge has discretion to interpret the language. You're saying here the operation was virtually identical. It was virtually identical. Except for cutting out your signature items and maybe adding onion rings or something new. Right. And so it's basically the same operation. Correct. And whatever else it might mean or not mean, you think similar to means this. Correct. Are you saying that if I came into the restaurant the day before the Philly started and I ordered the sandwich and I liked the sandwich, I said, God, this is great. I come back two days later and I order the same sandwich, I wouldn't know the difference? Is that the test? That would be yes. That would be a good test. The tablature evidence shows that the sandwich before and the sandwich after to the customer was the same sandwich. The names changed a little bit. I'm not talking about the name. But it is roughly the same sandwich. It wouldn't have to be the same sandwich under the legislation. No. It would have to be similar, and then I guess you'd have to decide if similar raises an issue of fact or whether it's a legal tagline that you could apply to a sandwich. Yeah. And we tried to go through and, I mean, if you look at the pictures, the board has the ingredients of every sandwich before and afterwards, and they're virtually identical. If you're going on the trade dress issues, though, you're going on the sandwich. Correct. This is not, the trade dress happens to be the same, but we're not, this is not a trade dress claim. So it's really based on the agreement and the non-competition clause that we're restricted to. Correct. They also raise an issue about the arbitrator's relationship being not disclosed. And our view on this is that that whole issue is at some point arbitration, if you don't have a remoteness or a trivial standard, arbitration is going to come to a standstill. All they had in front of Judge Zille was a page from the web page of a young man's current bio that showed he formerly worked at the firm of the arbitrator. And that kind of connection is so remote and trivial that it can't rise to the issue of a reasonable impression of partiality. The only case that they addressed that found a reasonable impression of partiality was the Schnitz case. But there the arbitrator represented the corporate parent of one of the parties. So it was direct representation, there's issues of confidentiality, there's issues of bias. Most corporations do not like if you find against their subsidiaries. Do we have evidence in the record as to the local, whether the two individuals were in the firm at the time this case was in the firm? I don't. I believe you can tell from the biographies that they were not. But I don't know if that is clear. Because all they did was take a page from their bios. And the associate wasn't even in the arbitration. The associate was just local counsel for the federal court action. So the associate never appeared in the arbitration. It was kind of one of those flukes that comes up afterwards that they caught. And they had very good lawyers. And now we're trying to use it as a pretext. Was the associate in the arbitrator's firm when the arbitrator took this job on? He was not. He was not in the firm. I do not know if you can tell that from the Web page or not. But he was not. He was with the other firm. I guess from their evidence you could tell that, because his name appears as the junior associate on some papers that were submitted. And in the district court, in that case, preceded the arbitration. So that would be clear from the record. So he's the junior associate in the court case which started first. And at a later point in the arbitration, the arbitrator saw some of those pleadings where his name was on it. So you know that he was not there first. There are many other issues. And I'd like to address any questions you have. If not, I'll just go through them in the order in which they were raised by appellee. Here we have no further questions that we're interested in having addressed. I respect your time. It's getting close to lunch, and I'm glad you're asking. So we're going to go beyond lunch, but. Your Honor, with respect to collateral estoppel, it's very clear that the burden is on escape. I'm quoting from Clark v. Bear Stearns. The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment. Well, but, As I understand counsel's argument, and maybe I'm off base, if you plead similarity of all, violations against all locations, why should they cause a dispute? We didn't plead that. We just filed a complaint, a generic complaint, saying there are these problems. There is no displeading. We're not required to distinguish in our complaint. But I will say that. Change that posture with your summary judgment. Well, yes, because in summary judgment, the evidence was the arbitration decision. And the arbitration decision at ER 73A says in it, a finding, the arbitrator considers no issues with respect to South Center. I don't see how the burden can be shifted on that. If he had, you wouldn't have a collateral estoppel issue. The collateral estoppel issue comes in because he didn't address it. But you didn't change his argument. You didn't change the posture of your pleading with your pleadings in summary judgments, what he's saying. Well, we're not required to. The burden is on them. The Court goes on to say, this Court, it is not enough that the party, that is, them, introduce the decision of the prior court. Rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated. Escape failed to do that. Can I explain what the difficulty is? It's like, which of you is in the catch-22 box here? Because you file these allegations, which you're entitled to do, but as framed, they're generic for everybody. And we have the arbitrator's decision. And, of course, he didn't address specifically South Center. That doesn't mean, however, that some issue he did address is not necessarily the same for South Center. We just don't know. Okay. And they say, well, we think the whole thing should fall out. Here's the allegation. Here's the arbitrator's decision. We think it's the same issue as pled. Wouldn't that then shift at least the burden, not the ultimate burden, but the burden of putting in some evidence to say, look, South Center is actually different. It's not generic. It's not even the tiniest. Judge McKeon, we argued to the court below that there are differences, and we said it's not our burden to put in the evidence. Collateral estoppel is disfavored. They're the ones seeking. Let me just ask you this. If you argued it, we're always left in this position where why didn't you just put in a simple affidavit that says French frying in South Center is different than French frying in Kitsap, and that's an issue that needs to be explored. I guess we relied on this Court's law, and there's more law. It says if the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue. Could you just say again which case you're reading from? Yes. That is Steen v. John Hancock, Mutual Life, 106 Federal 3rd, 904 at 912. Thank you. And this decision, based on the express finding of the arbitrator, could rationally have been decided based on things that happened at other franchises that don't affect the facts that occurred at South Center. Okay. Your time is up, and you presented an interesting question on the collateral estoppel. Thank you very much. Thank you. The case of BDK v. Escape Enterprises is submitted, and the last case for argument this morning is Mount St. Helens Mining v. the United States.
judges: Brunetti, McKeown, Gould